IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LARRY ROGER SHEPHERD, ) | |
| (AIS #124544), ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 12-00290-WS-N |
| ) | |
| CORIZON, INC., et al., ) | |
| ) | |
| Defendants. ) | |

REPORT AND RECOMMENDATION

This action is before the Court on a motion to dismiss (doc. 58) filed by the Alabama Department of Corrections ("ADOC")[1]. This matter has been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of ADOC's motion (doc. 58), plaintiff's response in opposition thereto (doc. 63), and all pertinent portions of the record,[2] the undersigned recommends that the motion be **denied**.

I.  BACKGROUND.

Larry Roger Shepherd, plaintiff herein, was an inmate in the custody[3] of ADOC at all times material to the claims in this § 1983 action. *See* 42 U.S.C. § 1983. In April 2011,

---

[1] This motion to dismiss was also filed by Defendant Bobby Barrett, Warden of Kilby Correctional Facility, but this defendant has now been dismissed by stipulation of the parties. (Docs. 61 and 62).

[2] Pursuant to the Order entered by the undersigned on December 21, 2012, the defendants were given an opportunity to Reply to the plaintiff's response by no later than January 11, 2013. (Doc. 59). Defendants neither filed such a Reply nor requested an extension of time within which to do so.

[3] Shepherd was incarcerated at Holman Correctional Facility ("Holman") in Atmore, Alabama, (Continued)

Shepherd began experiencing symptoms with regard to his eyes that were ultimately determined to be caused by cataracts. (Doc. 25 at ¶ 18). He complained of spots in his vision, and by June 2011 he was unable to see well enough to read. (*Id*.)

In June 2011, Shepherd requested a medical visit, complaining that he believed he had cataracts and that everything looked fuzzy. (*Id.* at ¶ 19). Defendant Corizon, Inc. ("Corizon") is a private for-profit corporation that is under a contractual obligation to ADOC to provide medical care for inmates in ADOC Correctional Facilities. (*Id.* at ¶ 11). A nurse examined Shepherd's eyes, and, although he was unable to read the vision chart, he was not referred to an eye doctor. (*Id*. at ¶ 19) Over the summer, he submitted three sick call slips requesting that his eyes be checked. (*Id*. at ¶ 20). He was scheduled and went to see an optometrist on one occasion but the optometrist did not see him. (*Id.*) The record contains no information as to the reason the optometrist did not see Shepherd on this one occasion.

Shepherd was seen by an optometrist on September 21, 2011, who diagnosed cataracts in both eyes and referred him to an outside ophthalmologist to be assessed for cataract surgery. (*Id*. at ¶ 21). On September 29, 2011, Pamela Barber, M.D., the Medical Director at the Holman Correctional Facility and a defendant herein, signed a consultation request for Shepherd to go to an ophthalmologist for cataract surgery. (*Id*. at ¶ 22). On October 26, 2011, Hugh M. Hood, M.D., Associate Regional Medical Director for Corizon and a defendant herein, approved the consultation request, allowing an appointment to be made for Shepherd. (*Id*. at ¶ 23). On the

---

until April 3, 2012, when he was moved to Kilby Correctional Facility ("Kilby") in Mt. Meigs, Alabama. (Doc. 25 at ¶ 10). On November 29, 2012, Plaintiff Shepherd was released from Kilby Correctional Facility to his sister's home on a medical furlough. (Doc. 51 at 1).

approval of the consultation request, Dr. Hood approved the consultation and cataract extraction for "one eye only." (*Id*.).

On November 7, 2011, Shepherd was seen by Dr. John Jones, an ophthalmologist. (*Id*. at ¶ 24). After a complete examination, Dr. Jones diagnosed Shepherd with cataracts in both eyes and found that, as a result, he was legally blind. (*Id.*) Dr. Jones reported that Shepherd needed cataract surgery "ASAP." (*Id.*) This report was received by Dr. Barber on November 7, 2011, the day Shepherd was examined by Dr. Jones. (*Id*. at ¶ 25). On February 23, 2012, Dr. Barber recommended that Dr, Jones's prescription be followed but limited the approval to surgery on a single eye. (*Id.*) On February 27, 2012, Dr. Hood approved Shepherd for cataract surgery, again limiting treatment to one eye only. (*Id*. at ¶ 26).

Shepherd was not informed at this time that a decision had been made. (*Id*. at ¶ 27). Over the following months, Shepherd alleges that he repeatedly inquired about when he would have the surgery prescribed by Dr. Jones in November 2011. He maintains that he repeatedly asked Dr. Barber but did not receive any information about his surgery. (*Id*. at ¶ 29).

Shepherd alleges that on March 2, 2012, he filed a medical grievance complaining of the delay in his surgery for the removal of cataracts from his eyes. (*Id*. at ¶ 30). Donny Myers, the Health Services Administrator at Holman advised Shepherd that his case "was reviewed by Dr. Barber and submitted to an outside doctor for further review." (*Id.*)

Shepherd further alleges that he appealed Myers's response on March 12, 2012, explaining that he had already seen an outside specialist who had recommended cataract surgery on both eyes. (*Id*. at ¶ 31). Myers responded to the appeal, stating "According to Dr. Barber, you have been approved to have the surgery. I cannot give you a date, time or doctor's name. You will be advised of these particulars." (*Id.*)

Shepherd asserts that he filed another medical grievance on March 16, 2012, complaining about and detailing the delay in needed treatment. (*Id*. at ¶ 32). Myers again responded by stating again that the surgery had been approved and he would be informed about when it would take place. (*Id.*)

On April 3, 2012, Shepherd was transferred to Kilby. (*Id*. at ¶ 33; doc. 11 at 2). Shepherd alleges that, after his transfer to Kilby, he requested to see an eye doctor but Dr. Doshi refused that request. (*Id*. at ¶ 34). While incarcerated at Kilby, Shepherd was never given a date for surgery. (*Id*. at ¶ 35).

On April 27, 2012, Shepherd filed a complaint *pro se* pursuant to 42 U.S.C. § 1983 (doc. 1), as well as a motion to proceed in *forma pauperis* (doc. 2) and a motion for a preliminary injunction (doc. 3). Shepherd asserted claims for deliberate indifference to his serious medical need by defendants' intentional delay in providing the prescribed cataract surgery to correct his blindness, which he asserted was cruel and unusual punishment in violation of the Eighth Amendment. (Doc. 1). Shepherd named the following defendants in his *pro se* Complaint: Dr. George Lyrene, Dr. Hugh Hood, "Dr. Barber", and Correctional Medical Services, Inc. (Doc. 1 at 10-14).

On May 21, 2012, the medical defendants, identified themselves as "Corizon, Inc., f/k/a Correctional Medical Services, Inc. . . ., Dr. Hugh M. Hood, and Dr. Pamela Barber," and filed an Answer (doc. 10), Special Report (doc. 11), and Response in Opposition (doc. 12) to Shepherd's motion for a preliminary injunction. Defendants asserted, in sum, that:

> Mr. Shepherd suffers from end-stage lung disease, [Chronic Obstructive Pulmonary Disorder ("COPD")] and emphysema. Due to Mr. Shepherd's chronic medical conditions, he is not a candidate for cataract surgery. Mr. Shepherd signed a do-not-resuscitate order on April 3, 2012.

4

(Doc. 11 at 2, *citing* Doc. 11-1, Affidavit of Dr. Hugh Hood).  Defendants contended that, since Dr. Hood approved the cataract surgery for one eye on February 27, 2012, "Mr. Shepherd's pulmonary condition has become significantly worse [and he] is longer [sic] a candidate for cataract surgery due to excessive risk for complications from any surgical procedure."  (*Id*. at 3).  Defendants also asserted that Shepherd failed to exhaust his administrative remedies "before seeking court intervention regarding his claim."  (*Id*. at 14-17, *citing* Doc. 11-6 at 2, Affidavit of Donny Myers (Claimed that "Mr. Shepherd has at no time filed a grievance with regard to his eye care or the need for cataract surgery.")).

The Court granted Shepherds' motion for appointment of counsel (doc. 14) on August 7, 2012 (doc. 17).  An amended motion for preliminary injunction (doc. 22) and an Amended Complaint (doc. 25) were thereafter filed with leave of Court (doc. 24).  In addition to the Alabama Department of Corrections[4] and Bobby Barrett, Warden of Kilby Correctional Facility, (the "ADOC defendants"), Shepherd named the following "medical defendants" in his Amended Complaint:  Corizon, Inc,[5] Hugh M. Hood, M.D.,[6] Pamela Barber, M.D.,[7] Sangeeta Doshi, M.D.,[8] David Pavlakovic, M.D.,[9] and Bobby Barrett, Warden of Kilby Correctional Facility.  In

---

[4] The Alabama Department of Corrections is identified as the "state agency . . . responsible for the constitutionally required medical care of inmates in its custody."  (Doc. 25 at ¶ 12).

[5] Corizon, Inc. is identified as a "private for-profit corporation under contractual obligation to Alabama Department of Corrections ('ADOC') to provide medical care for inmates in ADOC Correctional Facilities."  (Doc. 25 at ¶ 11).

[6] Hugh M. Hood, M.D. is identified as "an Associate Regional Medical Director of Corizon.  (Doc. 25 at ¶ 13).

[7] Pamela Barber, M.D. is identified as "the Medical Director at the Holman Correctional Facility."  (Doc. 25 at ¶ 14).

[8] Sangeeta Doshi, M.D. is identified as "the Medical Director at the Kilby Correctional Facility."  (Doc. 25 at ¶ 15).

Counts I through IV, Shepherd asserts claims against the medical defendants for deliberate indifference to a serious medical need in violation of the Eighth and Fourteenth Amendments. (Doc. 25 at ¶¶ 59-92). In Counts V and VI, Shepherd asserts claims for the denial of substantive due process in violation of the Fourteenth Amendment against Dr. Pavlakovic and Warden Barrett, respectively. (*Id*. at ¶¶ 93-100). In Counts VII and VIII, Shepherd asserts claims against the medical defendants under Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, and for a violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701. (*Id*. at ¶¶ 101-116). In Counts IX through XII, Shepherds asserts claims against the Alabama Department of Corrections under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, *et seq.*, and for violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701. (*Id*. at ¶¶ 117-146). In addition to these federal claims, Shepherd asserts a state law claim for fraudulent suppression of a material fact against Dr. Pavlakovic. (*Id*. at ¶¶ 147-152). Shepherd seeks, *inter alia*, compensatory and punitive damages as well as injunctive relief.

In his amended motion for a preliminary injunction, Shepherd seeks the following relief:

> Shepherd asks this Court for a preliminary injunction requiring Defendants to have Shepherd examined promptly by an independent expert to determine if he can withstand surgery and, if he can, to provide the surgery which was ordered "ASAP" nearly a year ago.

(Doc. 22 at 8). Shepherd denied that his health deteriorated prior to his transfer to Kilby:

> According to Shepherd, his health did not deteriorate between the time of his appointment with Dr. Jones in early November 2011 and his transfer to Kilby on April 3, 2012. [Doc. 22-1 at ¶ 29]. Indeed, while living at Holman during the five months after Dr. Jones prescribed surgery "ASAP," Shepherd was

---

[9] David Pavlakovic, M.D. is identified as "a physician at Kilby Correctional Facility [who] is employed by Corizon." (Doc. 25 at ¶ 16).

    able to spend several hours of most days outside without being on oxygen. *Id.* ¶ 28.

(Doc. 22 at 6, *citing* Doc. 22-1, Shepherd's Affidavit dated September 18, 2012).[10] Shepherd also asserted in his affidavit that the "do-not-resuscitate" order ("DNR Order") that defendants contend he signed on April 3, 2012 (see, doc. 11 at 2, *citing* doc. 11-1, Affidavit of Dr. Hugh Hood), was signed only because it was presented as a document he believed to be a "property form" required when property is taken from an inmate "by custody staff." (Doc. 22-1 at ¶ 35). He claimed that he first learned that he signed a DNR Order from a nurse at Kilby following his transfer and immediately "told her that I was retracting it." (*Id.* at ¶ 36). Shepherd learned that the DNR Order had not been removed from his file when the defendants relied on it to oppose his motion for a preliminary injunction on May 21, 2012. (*Id.* at ¶ 38; *see also,* Doc. 11 at 2; Doc. 12 at 2). He then retracted the DNR Order in writing. (*Id.*).

  Shepherd further asserted that, following his retraction of the April 3, 2012 DNR Order, he was denied the assistance of "an inmate assigned to assist hospice patients with going to the bathroom, bathing, changing beds, and other daily needs" . . . "because I had not signed a Do Not Resuscitate Order." (*Id*. at ¶¶ 42-43). Shepherd further states that, "[i]n August 2012, in order

---

[10] Shepherd alleges that he has suffered from COPD since about 1997, a condition which has worsened over time to the extent that he was confined to a wheelchair by early 2011. (Doc. 25 at ¶ 38). In March 2011, he was moved permanently into the Holman Infirmary due to his difficulty breathing and need for a nasal cannula for oxygen. (*Id.* at ¶ 39). Prior to his transfer to Kilby in April 2012, he was able to go outside between one and four hours most days without the need for oxygen. (*Id.* at ¶ 40). Shepherd contends that he did not suffer a decline in his health between the time Dr. Jones prescribed his cataract surgery in November 2011 and his transfer to Kilby in April 2012. (*Id.* at ¶ 41). Defendants have proffered no evidence, and do not contend, that Shepherd was ever examined by an anesthesiologist or other doctor to determine whether or not he was sufficiently healthy to undergo the cataract surgery. (*Id.* at ¶ 42). Following his transfer to Kilby, Shepherd contends that he was kept in a cold isolation cell within the Kilby hospital unit for three months, and was not allowed to go outside or bathe for three weeks, before being moved into a general population area of the hospital. (*Id.* at ¶ 43). It is during this time that he contends his health deteriorated. (*Id.*)

to get assistance with going to the bathroom, bathing, and the many daily tasks with which I needed help, I signed another Do Not Resuscitate Order." (*Id*. at ¶ 44).

On October 12, 2012, Shepherd's amended motion for a preliminary injunction was scheduled for a hearing on October 19, 2012. (Doc. 24).[11] The medical defendants (Corizon, Hood, Barber, Doshi and Pavlokovic) filed a written response (doc. 33) in opposition to Shepherd's motion for injunctive relief (doc. 24) on October 22, 2012, addressing only Shepherd's deliberate indifference claims. Shepherd filed a reply (doc. 36) arguing that he had established a likelihood of success on the merits because, *inter alia*, the medical notes proffered by the defendants nowhere contains any medical determination that he should not have the cataract surgery "prescribed 'ASAP' by ophthalmologist Dr. Jones on November 7, 2011." (Doc. 36 at 5). Shepherd also filed a motion for expedited discovery (doc. 37), which was granted following the hearing conducted on October 25, 2012 (doc. 40).

On November 29, 2012, Shepherd was released from Kilby Correctional Facility to his sister's home on a medical furlough. (Doc. 51). In view of this release, Shepherd requested that his motion for a preliminary injunction be withdrawn. (*Id*.).

ADOC's present motion to dismiss (doc. 58)[12] was filed on December 21, 2012. ADOC argues, in sum, that Shepherd's claims against it are due to be dismissed "on the basis of Eleventh Amendment immunity and mootness." (*Id*. at 2). ADOC's immunity argument is predicated on case law in which Congress had not validly abrogated Eleventh Amendment immunity otherwise applicable to ADOC as an "arm of the State" of Alabama. (*Id*. at 2). *See*

---

[11] Defendants filed a motion to continue on October 16, 2012 (doc. 27), which was granted and the hearing was reset for October 25, 2012 (doc. 28).

[12] The ADOC defendants had previously filed a motion to dismiss (doc. 54) on December 11, 2012, but that motion was struck for failure to comply with the Local Rules of this Court. (Doc. 56).

*e.g.* Ross v. Jefferson County Dept. of Health, 701 F.3d 655, 659 (11th Cir. 2012)(" Although Congress may sometimes abrogate the immunity of the states, under the Eleventh Amendment, Congress did not validly abrogate that immunity under Title I of the [Americans with Disabilities Act]."). ADOC's mootness argument is predicated on Shepherd's medical furlough and the contention that the furlough renders his request for prospective and/or injunctive relief moot because he is no longer in the custody or control of ADOC. (*Id.* at 3).

Shepherd argues, in sum, that his claims for damages under the Americans with Disabilities Act and the Rehabilitation Act are not barred by the Eleventh Amendment and remain justiciable. (Doc. 63 at 12). *See e.g.* United States v. Georgia, 546 U.S. 151, 158-59 (2006)("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."). Shepherd specifically argues that ADOC's immunity with respect to his claims under the Rehabilitation Act were waived by ADOC's acceptance of federal funds. *See e.g.*, Garrett v. University of Alabama at Birmingham Bd. Of Trustees, 344 F.3d 1288 (11th Cir. 2003)(Held that 42 U.S.C. § 2000d-7 "expressly abrogated" Eleventh Amendment immunity for suits brought under the statute listed therein). As stated above, ADOC was given the opportunity to reply to Shepherd's arguments but did not file a reply or seek an extension of time within which to do so.

II.     STANDARD OF REVIEW.

Prior to Bell Atlantic v. Twombly, 550 U.S. 544 (2007), a court could only dismiss a complaint "if it is was clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," language set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957). This language as it relates to the Rule 12(b)(6) standard was expressly rejected in

Twombly wherein the Supreme Court set forth the following standard regarding a court's determination of the sufficiency of pleading such as is in issue in this case:

> Federal Rule of Civil Procedure 8(a)(2) requires only " a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [citation omitted] a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [citation omitted]. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. at 555.  The Supreme Court emphasized, however, that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 570.  The Supreme Court recently reinforced the Twombly standard in Ashcroft v. Iqbal, -- U.S. -- , 129 S.Ct. 1937, 1949-50 (2009).  The Court reiterated that a claim is insufficiently pled if it offers only "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'."  Iqbal, 129 S.Ct. at 1949, *quoting* Twombly, 550 U.S. at 557. *See also*, Phillips v. County of Allegheny, 515 F.3d 224, 233 (3rd Cir. 2008)("After Twombly, it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct'."), *quoting* Twombly, 550 U.S. at 553, n. 8. *See also*, Sinaltrainal v. Coca-Cola Co., 2009 WL 2431463 (11th Cir. Aug. 11, 2009)("The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss [*citing* Iqbal, 129 S.Ct. at 1949] [and] [t]he well-pled allegations must nudge the claim 'across the line from conceivable to plausible'" [*quoting* Twombly, 550 U.S. at 570]").

"A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  McTernan v. City of York,

10

Pennsylvania, 564 F.3d 636, 646 (3rd Cir. 2009), *quoting*, Phillips, 515 F.3d at 231, in turn *quoting*, Twombly, 550 U.S. at 553, n. 8.  The Supreme Court's Twombly formulation of the pleading standard "'does not impose a probability requirement at the pleading stage,'" but instead "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of the necessary element." *Id*., *quoting* Phillips, 515 F.3d at 234, in turn *quoting*, Twombly, 550 U.S. at 556.

III.  ANALYSIS.

   A.  Eleventh Amendment Immunity and the Americans with Disabilities Act.

ADOC seeks dismissal of this case, *inter alia*, on the grounds that the Eleventh Amendment bars Shepherd's claims.  (Doc. 58 at 2).  ADOC relies in part on Versiglio v. Board of Dental Examiners of Alabama, 686 F.3d 1290, 1291 (11th Cir. 2012)("[I]t is also well-settled that Eleventh Amendment immunity bars suits brought in federal court when the State itself is sued and when an 'arm of the State' is sued."), *quoting* Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir.2003).  The sole issue in Versiglio was whether the Board of Dental Examiners was an "arm of the State" entitled to assert such immunity.  Although not specifically alleged by ADOC, it is well established that "suit against [Alabama] and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit." Williams v. Bennett, 689 F.2d 1370, 1376 (11th Cir. 1982), *quoting* Alabama v. Pugh, 438 U.S. 781, 782 (1978).

The immunity generally applicable with respect to unconsented suits brought against Alabama and ADOC may also be abrogated by Congress. McCauley v. Georgia, 466 Fed.Appx. 832, 835 (11th Cir., Apr. 12, 2012), *citing* U.S. Const. amend. XI; Tennessee v. Lane, 541 U.S. 509, 517 (2004).  "To abrogate Eleventh Amendment immunity, Congress must: (1) make clear

11

its intent to do so and (2) do so "pursuant to a valid grant of constitutional authority." McCauley, 466 Fed.Appx. at 835-36; *quoting* Lane, 541 U.S. at 517.

The Supreme Court has held that "insofar as Title II [of the Americans with Disabilities Act] creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." United States v. Georgia, 546 U.S. 151, 158-59 (2006)(Case involves claims by a paraplegic inmate in the Georgia prison system under both 42 U.S.C. § 1983 and Title II of the ADA, as to which the Eleventh Circuit held that the inmate "had alleged actual violations of the Eighth Amendment by state agents.").[13]  The Supreme Court reasoned that  "th[e] same conduct that violated the Eighth Amendment also violated Title II of the ADA [because] it is quite plausible that the alleged deliberate refusal of prison officials to accommodate [the paraplegic inmate's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted 'exclu[sion] from participation in or ... deni[al of] the benefits of' the prison's 'services, programs, or activities.' 546 U.S. at 157, *citing* 42 U.S.C. § 12132; and Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 210 (1998)(noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs).  The Supreme Court further reasoned that, the paralytic inmate's claims for money damages against Georgia under Title II "were evidently based, at least in large part, on conduct that independently violated the provisions of § 1 of the Fourteenth Amendment."  *Id*., *citing* Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 463

---

[13] Title II of the ADA provides that, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Private suits for money damages are authorized under Title II. 42 U.S.C. § 12202; Tennessee v. Lane, 541 U.S. 509, 517–18 (2004).

(1947)(plurality opinion) (the Due Process Clause of the Fourteenth Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual punishment).

Shepherd has sufficiently pled a violation of Title II of the ADA, which encompasses conduct by ADOC that plausibly constitutes an independent violation of the Eighth Amendments prohibition against cruel and unusually punishment and thus a violation of the Fourteenth Amendment. Specifically, in Count IX, Shepherd alleges a discriminatory denial of necessary medical care. He was denied cataract surgery despite having gone blind in both eyes and the agreement of all doctors involved in his care (between the time Dr. Jones prescribed his cataract surgery in November 2011 and his transfer to Kilby in April 2012), that he needed the surgery. (Doc. 25 ¶¶ 18-41). The denial of necessary medical care to a state prisoner is cruel and unusual punishment in violation of the Eighth Amendment. Brown v. Plata, 131 S.Ct. 1910, 1928 (2011)("'The basic concept underlying the Eighth Amendment is nothing less than the dignity of man'."), *quoting* Atkins v. Virginia, 536 U.S. 304, 311 (2002); *see also* Estelle v. Gamble, 429 U.S. 97, 103 (1976)("[D]enial of medical care may result in pain and suffering which no one suggests would serve any penological purpose.").

In Count XI, Shepherd alleges he has been denied access to a toilet that could accommodate his wheelchair and oxygen tank. (Doc. 25 at ¶¶ 38-39). The only wheelchair accessible toilet in the area in which he was housed at Kilby was at the end of a narrow hallway that Shepherd could not navigate in his wheelchair and was used by smokers, who then attempted to cover up the smell of smoke by turning on the shower and creating steam. (*Id*. at ¶¶ 51-58). Both the smoke and the steam aggravated Shepherd's COPD, making it impossible for him to use that toilet. (*Id*.) Shepherd was unable to use the other available toilets on his own, and

for months was not provided any assistance to reach them.[14] (*Id.*) The Eighth Amendment prohibits "penalties . . . that transgress today's 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" Hutto v. Finney, 437 U.S. 678, 685 (1978), *quoting* Estelle, 429 U.S. at 103. The denial of access to a toilet violates the dignitary prohibitions of the Eighth Amendment. Georgia, 546 U.S. at 155 (noting that the denial of assistance with going to the toilet was one of the "serious allegations" in an inmate's complaint); see also Plata, 131 S.Ct. at 1924 (noting deprivation of access to toilets as a result of unconstitutional overcrowding and in suicide watch cells); Hope v. Pelzer, 536 U.S. 730, 734 & 738 (2002) (repeatedly noting denial of bathroom breaks for inmate unconstitutionally left handcuffed to hitching post).

Shepherd has, therefore, sufficiently stated claims that ADOC violated his rights under the ADA by their conduct, which independently constitute a violation of the Eighth Amendment prohibition against cruel and unusual punishment.  For the reasons stated above, the undersigned concludes that those claims are not barred by the Eleventh Amendment because Congress has validly abrogated such immunity.

B.    Eleventh Amendment Immunity and Section 504 of the Rehabilitation Act.

ADOC is also not protected by immunity from litigation of Shepherd's claims under Section 504 of the Rehabilitation Act, which also address ADOC's denial of his necessary cataract surgery and failure to provide him with a toilet he could access.  In Section 504 of the

---

[14] Shepherd alleges that assistance with getting to the toilet at Kilby was conditioned on his giving up his right to life-sustaining medical care.  (Doc. 25 at ¶¶ 53-57).  Shepherd alleges that, only after he signed a "Do Not Resuscitate" order, was a hospice worker permitted to assist him with daily needs like going to the toilet. (*Id.* ¶ 58). Shepherd further alleges that, following his transfer to Kilby, he was kept in a cold isolation cell within the Kilby hospital unit for three months, and was not allowed to go outside or bathe for three weeks, before being moved into a general population area of the hospital. (Id. at ¶ 43).   It is during this time that he contends his health deteriorated.  (Id.)

Rehabilitation Act of 1973, as amended by 42 U.S.C. § 2000d-7,[15] Congress showed its unequivocal intent to abrogate states' Eleventh Amendment immunity by unambiguously conditioning receipt of federal funds on a waiver of immunity. Garrett v. Univ. of Alabama at Birmingham Bd. Of Trustees, 344 F.3d 1288, 1293 (11th Cir. 2003).

ADOC does not dispute that it has accepted federal funds. (*See* uncontested allegation at Doc. 25, ¶ 12). By accepting these funds, ADOC has waived Eleventh Amendment immunity from suit under Section 504 of the Rehabilitation Act.
Garrett, 344 F. 3d at 1293; 42 U.S.C. § 2000d-7. Shepherd has, therefore, asserted plausible claims under Section 504 of the Rehabilitation Act, which are not barred by the Eleventh Amendment.

    C.    Mootness.

ADOC argues that Shepherd's claims for injunctive and/or prospective relief are now moot because he is no longer in ADOC custody. (Doc. 58 at 3). While it may be true that ADOC cannot now be forced to provide the cataract surgery that might have improved Shepherd's quality of life in the time left him, or even to have him examined by an independent expert to determine if he can withstand surgery recommended nearly a year prior to his request for injunctive relief,[16] he is not barred from seeking monetary damages from ADOC for denial of that surgery and the other violations of the ADA and Rehabilitation Act. His release from ADOC's custody does not impact the availability of damages and does not strip him of his standing to assert such claims.

---

[15] "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C. 794], . . . ." 42 U.S.C. § 2000d-7.

[16] In any event, Shepherd has withdrawn these claims for injunctive relief since his furlough. (Docs. 51, 52)

CONCLUSION

For the reasons above, it is the recommendation of the undersigned that ADOC's motion to dismiss (doc. 58) be **DENIED**.  ADOC has not established that Shepherd's claims are barred by Eleventh Amendment immunity or are moot to the extent that he seeks monetary damages.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the magistrate judge.

**DONE** this  11th  day of March, 2013.

>  /s/ Katherine P. Nelson
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.      **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[17] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Opposing party's response to the objection**.  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  FED. R. CIV. P. 72; SD ALA LR 72.4(b).

3.      **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

**DONE** this the   11th   day of March, 2013.

/s/ Katherine P. Nelson
**UNITED STATES MAGISTRATE JUDGE**

---

[17] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  FED. R. CIV. P 72(b)(2).